UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA HORNE,

      Plaintiff,

v.                                                    Case No. 23-11439

PENTASTAR AVIATION, LLC,                   Sean F. Cox
                                                           United States District Court Judge

      Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff alleges that her former employer terminated her in violation of Title VII and

Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Plaintiff alleges that she incurred

religious discrimination in violation of Title VII and asserts those claims under both a disparate-

treatment and failure-to-accommodate theory. She also asserts a disparate treatment claim under

the ELCRA. The claims are based upon Plaintiff's allegations that her former employer failed to

accommodate her sincere religious belief against being vaccinated against COVID-19, and

treated other non-protected employees more favorably than her by allowing them to work

without being vaccinated. Plaintiff also asserts claims against her former employer under the

Fair Labor Standards Act and seeks to assert those claims as a collective action. She alleges that

Defendant violated the Act by failing to pay her, and other flight attendants, overtime pay. The

matter is currently before the Court on Defendant's Motion to Dismiss, brought under Fed. R.

Civ. P. 12(b)(6). The parties have briefed the issues and the Court heard oral argument on April

9, 2024. For the reasons set forth below, the Court denies the motion.

1

## BACKGROUND

### A.    Procedural Background

Plaintiff Laura Horne filed this action against Defendant Pentastar Aviation, LLC on June 19, 2023.  The action was filed in federal court based upon federal-question jurisdiction and Plaintiff asks the Court to exercise supplemental jurisdiction over her state-law claim.

After Defendant filed a Motion to Dismiss, this Court issued its standard order, giving Plaintiff the option of responding to the motion or filing an amended complaint in order to attempt to cure any pleading deficiencies.  Plaintiff opted to file an amended complaint.

Plaintiff's September 27, 2023 "First Amended Complaint" (ECF No. 11) asserts the following claims against Defendant: 1) "Violation of Title VII, 42 U.S.C. § 2000e, *et seq*. Religious Discrimination – Failure to Accommodate and Disparate Treatment" (Count I); 2) "Violation of Elliott-Larsen Civil Rights Act ('ELCRA') Religious Discrimination – Disparate Treatment" (Count II); 3) "Violation of the Fair Labor Standards Act" (Count III).   Plaintiff seeks to assert her Fair Labor Standards Act ("FLSA") claim as a collective action.  (*See* Am. Compl. at 30).

On October 11, 2023, Defendant filed the instant Motion to Dismiss, brought under Fed. Civ. P. 12(b)(6).  Defendant attached the following as exhibits to its motion: 1) what it purports to be Plaintiff's September 8, 2021 letter to Defendant; and 2) "PDF copies" of various websites.

Plaintiff's brief in opposition to the motion attached the following as exhibits: 1) what she purports to be her September 8, 2021 letter to Defendant; 2) Defendant's letter in response; and 3) a copy of a news article, titled "General Motors and Ford won't mandate Covid-19 vaccination for employees."

2

**B.      Standard Of Decision**

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.*  When assessing the sufficiency of a plaintiff's claim, this Court must accept the complaint's factual allegations as true.  *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937.

"Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings, or else it must convert the motion into one for summary judgment under Rule 56. *See Wysocki v. Int'l Bus. Mach. Corp*., 607 F.3d 1102, 1104 (6th Cir. 2010)." *Electronic Mech. Sys., LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).  "However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.' *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Meyers v. Cincinnati Bd. of Educ*., 983 F.3d 873, 880 (6th Cir. 2020))." *Id*.  This Court "may consider public records for the truth of the statements contained within them only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'"  *Id.* (citing *Passa v. City of*

*Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

Here, both parties have attached, as an exhibit to their respective briefs, what they identify as Plaintiff's religious exemption letter that was sent to Defendant. Notably, however, the letters submitted by the parties are different. (Compare ECF No. 14-2 with 15-1). While the Court may generally consider such a letter in ruling on motion to dismiss, because it is central to the complaint and referenced in it, that is the general rule that applies when there is no dispute about the actual document. Thus, while this Court may consider the portions of the letters that are the same, it will not consider the portions of the letter that differ.

Both parties have also attached other exhibits that should not be considered by the Court, unless the Court converts the pending motion into a summary judgment motion. This includes pdf print-outs of unspecified websites that contain language Defendant contends Plaintiff copied and then used in her religious exemption letter. (*See* Def.'s Exs. 2, 3 & 4). Plaintiff has likewise attached an article about GM's practices during COVID. When the parties do this (ie., ask the Court to consider such materials when ruling on a motion to dismiss), the Court should clarify whether it intends to convert the motion in to a summary judgment motion. This Court declines to convert the motion into a summary judgment motion and will not consider these materials.

Because at the motion-to-dismiss stage, the Court is considering the allegations in the complaint, a 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations. *Snyder-Hill v. Ohio State Univ.,* 48 F.4th 686, 698 (6th Cir. 2022). (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). However, dismissal is warranted if the allegations in the complaint "affirmatively show that the claim is time-barred."

*Id.*

## C.   Relevant Factual Allegations

Plaintiff Laura Horne was employed by for Defendant Pentastar Aviation, LLC for more than thirty-eight years.  (Am. Compl. at ¶¶ 2 & 14).

### Allegations Regarding FLSA Claims

Plaintiff was employed as a flight attendant for Defendant. (Am. Compl. at ¶¶ 2 & 14). "The basic duties of a Flight Attendant are primarily made up of non-managerial and non-administrative tasks."  (Am. Compl. at ¶ 92).

Plaintiff alleges that, at all relevant times, Defendant has been "a private non-commercial airline."  (Am. Compl. at ¶ 92).  She alleges that Defendant "exclusively services General Motors and does not offer commercial airline services to the general public."  (Am. Compl. at ¶ 15).  Plaintiff alleges that the "common carrier" exemption to the FLSA "does not apply because Defendant is a private non-commercial airline."  (Am. Compl. at ¶ 93).

Plaintiff alleges that "[p]rior to May 5, 2003, Plaintiff was properly classified as eligible for overtime pay."  (Am. Compl. at ¶ 96).

"On May 12, 2003," however, "Defendant without justification 'reclassified [Plaintiff] from hourly nonexempt to salaried exempt,' whereupon she was no longer 'eligible for overtime pay for time worked in excess of 40 hours in a work week.'" (Am. Compl. at ¶ 97).  She alleges that Defendant implemented policies and practices "to prevent Plaintiff and other similarly situated individuals from being compensated overtime hours despite working over 40 hours a week."  (Am. Compl. at ¶ 98).

Plaintiff alleges that she was "misclassified exempt from overtime and unlawfully

5

deprived of overtime compensation for all hours worked in excess of forty (40) per week." (Am. Compl. at ¶ 94). Plaintiff alleges that, after 2003, she "never received overtime pay despite routinely working over forty (40) hours per week." (Am. Compl. at ¶ 95).

Plaintiff alleges that "Defendant knew, or showed reckless disregard for the fact that it failed to pay Plaintiff overtime compensation in violation of the FLSA." (Am. Compl. at ¶ 101). She alleges that Defendant's conduct "constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 2559(a)." (Am. Compl. at ¶ 105).

Plaintiff alleges that "[o]n August 17, 2004, the U.S. Department of Labor issued a response 'to [a] request for an opinion on the application of the overtime provisions of the Fair Labor Standards Act'" relative to a "private employer that maintains three aircraft and leases a fourth aircraft to another corporate entity . . ." (Am. Compl. at ¶¶ 106-107). The letter gives an opinion as to whether the entity at issue meets the common law definition of a common carrier for purposes of the RLA and concludes that it does not. (*Id.*; *see also* ECF No. 15-4).

Plaintiff seeks to assert her FLSA claims on a collective basis. "With respect to the collective action claims under the FLSA, the collective action is defined as (a) all current and former employees of Defendant who worked as Cabin/Flight Attendants from three (3) years preceding the filing of this lawsuit through the culmination of this litigation." (Am. Compl. at ¶ 99).

### Allegations Related To Vaccination Requirement And Plaintiff's Termination

In mid-to-late 2021, Defendant announced a policy requiring all employees working with certain clients to fully vaccinate against COVID-19 or to submit accommodation requests. (Am. Compl. at ¶ 23).

6

Plaintiff alleges that she "seeks to make all decisions, including those regarding vaccination and other medical decisions, through prayer and faith-based reasoning" and that her "morals and conscience are based on her religious beliefs and the teachings of God and the Bible." (Am. Compl. at ¶¶ 24 & 25). Plaintiff "has been a follower of the Catholic Church all her life and attends church services multiple times per week," "attends church every Sunday," and her "coworkers and supervisors were aware of her sincere religious beliefs." (Am. Compl. at ¶¶ 26-28). "Plaintiff attended mass with her coworkers, Robert Lark and Kevin Guckian, while traveling for her job." (Am. Compl. at ¶ 29).

Plaintiff alleges that her "sincerely held religious beliefs precluded her from vaccinating against COVID-19," that she "sought counsel with her Pastor, Father Robert Scott, regarding her decision not to receive the COVID-19 vaccine," and that "Father Robert Scott endorsed Plaintiff's decision to remain unvaccinated against COVID-19." (Am. Compl. at ¶¶ 30-32). Plaintiff alleges that she "holds a *bona fide* religious belief that conflicts with" Defendant's "vaccine mandate." (*Id.* at ¶ 113). Plaintiff alleges that she "consulted publicly available websites, religious texts, and also prayed before drafting her religious accommodation request." (Am. Compl. at ¶ 33). Her Amended Complaint alleges that:

34.   Plaintiff believes that the Holy Spirit has a plan for her.

35.   Plaintiff speaks with the Holy Spirit through prayer.

36.   The Holy Spirit expressly directed Plaintiff not to receive the COVID-19 vaccine.

37.   Plaintiff further believes that God created her in his image and that it would violate Plaintiff's sincerely held religious beliefs to alter her body by receiving the COVID-19 vaccine.

7

(Am. Compl. at ¶¶ 34-37).

Plaintiff alleges that "[o]n or about September 8, 2021, Plaintiff submitted her religious accommodation request detailing her sincerely held *bona fide* religious beliefs precluding COVID-19 vaccination."  (Am. Compl. at ¶ 38).  Her "religious accommodation request stated in part:

> *Laura Horne . . . . a living woman, retain and reserve all of my God-given rights, including sole possession and sole use of all my biological materials, which are granted to [me] by my creator.*
>
> *In the State of Michigan, I have the right to declare Religious and Medical Exemptions.*
>
> *I retain the right to decline all attempts to access, influence or otherwise alter any of my God-given biological material and or biological systems, which are unique, flawless and originally design[ed] and crafted by my creator and of which my creator has granted me sole possession proprietorship and use of. My moral duty to refuse the use of medical products, including certain vaccines that are produced and or tested with human cell lines derived from abortions. My moral obligation is to my creator only. I have a sincere and deep religious belief that my body is the temple of the Holy Spirit. I also have the right and duty to obey my conscience.*
>
> ***
>
> For the past 38 years I have been [a] loyal and dedicated employee to Pentastar Aviation. I love my job and the people I work for.
>
> Pursuant to my above statement, I decline the offer to be vaccinated[.]

(Am. Compl. at ¶ 39) (emphasis added).  It is undisputed that Plaintiff's letter also included other concerns about getting vaccinated.

On or about September 10, 2021, "Defendant denied Plaintiff's religious accommodation request vi[a] letter" stating in part:

> We are in receipt of your *religious exemption letter* provided on September 8, 2021. Thank you.
>
> As we stated in our previous correspondence to you, the customer, GM, dictates

safety conditions, including vaccines, at its work site, in this case, the aircraft. And so, irrespective of your religious exemption letter, you cannot serve on the GM flight crew.

Be advised that Pentastar will follow its standard internal posting process. Should an internal opening be created because of someone moving into your open position as a part of the GM flight crew, you would be able to apply/interview to become a part of another customer's flight crew (without a vaccine mandate). If such opportunity is not possible, and as we stated before, Pentastar must release you from active employment and back-fill your position with an employee whom meets the GM crew requirements. You may, on your unpaid leave, take advantage of unpaid but accrued PTO. We will periodically review the circumstances and as, an alternative, you can apply to fill an open position at Pentastar. Right now, there is open Line Technician position for which you could apply. Please let us know about this possible alternative position.

If you prefer a separation from employment so that you may apply for unemployment benefits, please let us know.

(Am. Compl. at ¶ 40) (emphasis added).   Plaintiff alleges:

41.    Defendant could have offered Plaintiff several accommodations, including mask wearing, social distancing, daily and/or weekly testing.

42.    Defendant offered Plaintiff a position as a Line Service Technician.

43.    However, the line service technician position is physically demanding.

44.    Plaintiff was unable to accept the single alternative position offered by Defendant due to her age and physical ability.

45.     Plaintiff was not provided an opportunity to work as a Flight Attendant for contractors who did not require all staff to receive the COVID-19 vaccine.

(Am. Compl. at ¶¶ 41-45).

Plaintiff alleges that "Defendant denied Plaintiff's accommodation request and retaliated against her for engaging protected activity" and "Defendant discriminated against Plaintiff because of her religious beliefs." (Am. Compl. at ¶¶ 52 & 145). Following her letter to Defendant informing it of her religious beliefs, Defendant terminated Plaintiff's employment. (Am. Compl. at ¶¶ 126-27). Plaintiff also alleges that:

58.   Defendant treated other similarly situated employees with different religious beliefs more favorably than Plaintiff.

59.   Upon information and belief, Defendant treated employees not in a protected class more favorably than Plaintiff by allowing them to work without a COVID-19 vaccination.

(Am. Compl. at ¶¶ 58 & 59).

## ANALYSIS

## I.   Challenges To Plaintiff's Religious Discrimination Claims Under Title VII And Michigan's ELCRA

As Defendant's brief acknowledges, both Title VII and Michigan's ELCRA prohibit an employer from discriminating against an employee on the basis of religion.  (Def.'s Br. at 7) (citing 42 U.S.C. § 2000e-2(a)(1) and Mich. Comp. Laws § 37.2202).

There are two theories for asserting religious discrimination claims: disparate treatment and failure to accommodate.  In this case, Plaintiff has alleged both theories as to her claims brought under Title VII but asserts only a disparate treatment claim under the ELCRA.[1]

### A.   Has Plaintiff Sufficiently Pleaded A Religious Accommodation Claim Under Title VII?

Defendant first argues that Plaintiff has not sufficiently pled a religious accommodation claim under Title VII.  Defendant begins it argument by stating:

"The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). To do so, the employee must demonstrate that "(1) [s]he holds a sincere religious belief that

---

[1]Defendant's brief questioned whether Plaintiff was attempting to assert a failure-to-accommodate claim under the ELCRA because the body of Count II contains allegations similar to those in Count I.  (Def.'s Br. at 19).  Plaintiff's response confirms that she *is not* asserting a failure-to-accommodate claim under the ELCRA.  (*See* Pl.'s Br. at 20) ("Plaintiff's FAC does not allege an ELCRA Failure to Accommodate Claim, but rather an ELCRA religious discrimination – disparate treatment claim.").

10

> conflicts with an employment requirement; (2) [s]he has informed the employer
> about the conflicts; and (3) [s]he was discharged or disciplined for failing to
> comply with the conflicting employment requirement." *Id.*
> . . . .
> If an employee establishes a prima facie case, "the employer has the burden 'to
> show that it could not reasonably acommodate the employee without undue
> hardship." *Tepper*, 505 F.3d at 514.

(Def.'s Br. at 7-8).

Defendant argues that "the employee must specifically inform the employer that they are requesting an accommodation based on a sincere religious belief, as opposed to an accommodation based on disability or health concerns or some other unprotected rationale (e.g., vaccine safety and efficacy)." (*Id.* at 8). Defendant argues that Plaintiff has not sufficiently pleaded, and did not adequately inform Defendant, that she was requesting an accommodation for her religious beliefs.

As to the letter submitted to Defendant by Plaintiff, Defendant contends that it is "not a 'religious accommodation request'; it is a written explanation of her refusal to become vaccinated based upon her *concerns about vaccine safety and efficacy*." (Def.'s Br. at 9) (emphasis added). In support of this argument, Defendant directs the Court to Judge Berg's decision in *Collias v. Motorcity Casino*, 2023 WL 6406220 (E.D. Mich. 2023).

Defendant also suggests that Plaintiff's letter cannot be deemed to have expressed a "sincere" religious belief of Plaintiff's because Defendant believes that Plaintiff copied certain language in her letter from various websites. Defendant argues that it, therefore, did not have proper notice that Plaintiff was requesting a religious accommodation. (Def.'s Br. at 10).

Defendant further argues that her Title VII claim should be dismissed because Defendant could not reasonably accommodate Plaintiff without undue hardship. (Def.'s Br. at 14).

11

This Court denies Defendant's challenges to Plaintiff's Title VII failure-to-accommodate claim.

Notably, the *Tepper* case that Defendant directs the Court to was a case analyzing a summary judgment motion – not a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). That matters because, as this Court recognized in *Golles,* a plaintiff is not required to allege facts establishing a prima facie employment discrimination claim in order to survive a 12(b)(6) motion to dismiss:

> The Court rejects Defendants' challenge. That is because a plaintiff "need not" "allege facts establishing a prima facie of disability discrimination to survive a motion to dismiss under Rule 12(b)(6)." *Morgan v. St. Francis Hosp.*, 2019 WL 5432041 at * 1 (6th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-12 (2002)). In *Swierkiewicz,* the Supreme Court resolved "the question of whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the [*McDonnell Douglas*] framework." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). The Supreme Court "answered in the negative and explained that '[t]he prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." *Id*. And *Swierkiewicz* remains good law after the Supreme Court's decision in *Twombly*. *Serrano*, 699 F.3d at 897.
>
> Thus, a "complaint attacked by a motion to dismiss requires more than labels, conclusions, and a recitation of a cause of action, but it need not contain detailed factual allegations." (*Morgan, supra*)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff "need only 'give'" Defendants "fair notice of what her claims are and the grounds upon which they rest. *Morgan, supra* (quoting *Swierkiewicz, supra*).

*Golles v. Five Star Store It, LLC*, 2023 WL 5833858 at *4-5 (E.D. Mich. 2023).

Other district courts have recognized this same general concept in the context of motions to dismiss claims such as this one.  For example, in *Witham*, the district court explained that while the plaintiff "eventually must show" a prima facie case of religious discrimination under

Title VII, she need not plead facts establishing a prima facie case to survive a 12(b)(6) motion. *Witham v. Hershey Co.*, 2023 WL 8702637 at *3 (D. Minn. 2023). And the Sixth Circuit very recently confirmed that the *"Swierkiewicz* rule" remains intact. *Savel v. MetroHealth Sys.*, __ F.4th __, 2024 WL 1190973 at *7 (6th Cir. March 20, 2024) (Explaining that "*Swierkiewicz* controls" and thus a "plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint," and finding that the plaintiffs plausibly pleaded that the defendant "failed to give them a reasonable accommodation by denying their requests for a religious exemption to its vaccine mandate.").

As explained above, the Court will not consider the printouts that Defendant attached to its brief, from various websites, that it contends show Plaintiff merely copied what others have said in requesting religious accommodations or exemptions. Rather, the Court looks to the actual allegations in Plaintiff's Amended Complaint, and the undisputed portions of her letter to Defendant.

Although Plaintiff's letter to Defendant also stated additional concerns about the vaccine's safety and efficacy, those were not the only concerns expressed. Plaintiff's letter also expressed – in the first portion of her letter – her belief that the vaccine violates her religious beliefs.[2]  Indeed, Defendant's argument that it was not on notice that Plaintiff was expressing religious concerns (as opposed to just safety or efficacy concerns) is belied by Defendant's own letter to Plaintiff in response. (ECF No. 15-2) ("We are in receipt of your *religious exemption*

---

[2]Thus, Defendant's reliance on *Collias* is misplaced as the employee at issue there did not submit a religious accommodation request to her employer and, additionally, stated her opposition concerns in the complaint as medical as opposed to religious. Here, Plaintiff provided a written request and it stated both religious opposition and safety concerns.

*letter* provided on September 8, 2021.") (emphasis added).

The Court denies this challenge to Plaintiff's claim and rules that Plaintiff has

sufficiently alleged that it would violate her religious beliefs to receive the COVID-19 vaccine

and that she so advised her employer.  A number of other district courts, that recognized a

plaintiff need not plead a prima facie case, have so ruled.  For example, in *Smith*, the district

court ruled very concisely on a challenge like the one made here:

> The Court notes that at this stage, however, "a plaintiff need not make a prima
> facie showing of discrimination under the *McDonnell Douglas* framework in
> order to survive a motion to dismiss," as the prima facie "framework is an
> evidentiary standard and not a pleading requirement."  Plaintiff's Complaint will
> be evaluated under the "ordinary rules for assessing the sufficiency of a
> complaint."
>
> Plaintiff alleges he told Defendant that it would violate Plaintiff's sincerely held
> religious beliefs to take a vaccine derived from aborted fetal cell lines. As a
> consequence for his refusal to receive the vaccine, he was fired. The Court finds
> that, taking these allegations as true, Plaintiff has established a prima facie case of
> religious discrimination. As such, Plaintiff's claim for religious discrimination
> survives Defendant's Motion to Dismiss.

*Smith v. Terminez Pest Control, Inc*., 2023 WL 3569127 at *4 E.D. LA 2024).  Another example

is the district court's ruling in *Witham:*

> Hershey argues that Witham has failed to allege a plausible Title VII religious
> discrimination claim, but Hershey's arguments on this point are not persuasive.
> Hershey argues that Witham's objections to the COVID-19 vaccines and
> Hershey's vaccine policy are not "religious." For this argument, Hershey focuses
> on Witham'' broader allegations regarding, for example, the sanctity of his body
> and the dangerousness or ineffectiveness of the COVID-19 vaccines. *See, e.g., id.*
> ¶¶ 30, 36–37, 40, 42, 55, 75–84. The first answer to this argument is that it does
> not address Witham's abortion-specific concerns. Those concerns are (at least)
> plausibly religious. And those concerns mean the claim survives. The second
> answer is that determining whether Witham's objections—or which of them—are
> religious is a fact-intensive question that seems generally ill-suited for resolution
> at the motion-to-dismiss stage. *See Love v. Reed,* 216 F.3d 682, 687 (8th Cir.
> 2000) (identifying considerations relevant to answering whether a belief is
> religious in nature, as distinct from a belief that is secular or personal). That is not

to say this question could never be appropriate for resolution on a Rule 12(b)(6) motion. It is to say that Witham went to some length in his Complaint to tether his objections—including objections that might reasonably be construed as secular or personal—to his Catholic faith. It is therefore plausible that, for Witham, these concerns are rooted in his faith. That is enough for now.

*Witham, supra,* at *3.

Other district courts have also found such allegations regarding religious beliefs to be sufficient at this pleadings stage. *See, eg. Caspensen v. Western Union, LLC*, 2023 WL 6602133 (D. Colo. 2023).

The Court also rejects Defendant's 12(b)(6) challenge that Plaintiff's Title VII failure-to-accommodate claim should be dismissed because Defendant could not reasonably accommodate Plaintiff without undue hardship. (Def.'s Br. at 14). In responding to this challenge, Plaintiff asserts that the undue hardship is a defense that is not an issue that should be decided at the pleading stage of the case. Even Defendant acknowledges that undue hardship is an affirmative defense. (Def.'s Br. at 14). Thus, district courts have rejected such challenges in connection with motions to dismiss in these type of cases. *See, eg.*, *Dean v. Acts Retirement Life Communities*, 2024 WL 964218 at *6 (D. Md. 2024) ("Whether an undue hardship exists is usually considered an issue of fact to be determined on summary judgment" under authority such as *Groff v. DeJoy*, 600 U.S. 447, 468 (2023), noting that the defendant "does not identify, and the Court could not locate, a single case where a federal court decided whether an accommodation imposed an undue hardship on a motion to dismiss," and rejecting the challenge as premature.). This Court should do so as well.

Accordingly, the Court rejects Defendant's challenges to Plaintiff's Title VII failure-to-accommodate claim at this pleadings stage of the case.

**B.**      **Has Plaintiff Sufficiently Alleged A Disparate Treatment Claim Under Title VII And The ELCRA?**

In her Amended Complaint, Plaintiff asserts a disparate treatment claim under both Title VII (Count I) and the ELCRA (Count II).

Again, Defendant's brief questioned whether Plaintiff was attempting to assert a failure-to-accommodate claim under the ELCRA because the body of Count II contains allegations similar to those in Count I – rather than allegations about differential treatment.  (Def.'s Br. at 19).  Plaintiff's response confirms that she is not asserting a disparate treatment claim under the ELCRA.  (Pl.'s Br. at 20).  While the bodies of Counts I and II do not contain allegations about differential treatment, the Amended Complaint does include such allegations in the general factual allegation sections:

> 58.   Defendant treated other similarly situated employees with different religious beliefs more favorably than Plaintiff.
>
> 59.   Upon information and belief, Defendant treated employees not in a protected class more favorably than Plaintiff by allowing them to work without a COVID-19 vaccination.

(Am. Compl. at ¶¶ 58 & 59).

In challenging Plaintiff's disparate treatment claims, Defendant's brief again starts out by specifying what a prima facie case requires a plaintiff to prove:

> To make out a prima facie case of disparate treatment under Title VII and Michigan's ELCRA, Plaintiff must establish that she (1) belonged to a protected class; (b) suffered an adverse employment action; (c) was qualified for her position; and (d) was treated differently from similarly situated employees of an unprotected class for the same or similar conduct.

(Def.'s Br. at 18).  Defendant challenges only the last element.

Defendant argues that "[w]ithout a comparator, Horne has merely alleged that Pentastar

16

applied a policy she didn't like, not that she was treated differently based on her religion." (Def.'s Br. at 16).  In other words, Defendant contends that Plaintiff "does not sufficiently plead the existence of any similarly situated comparator."  (*Id*.).

As discussed above, a plaintiff is not required to plead a prima facie case in order to survive motion to dismiss.  "Put more plainly, a plaintiff need not allege facts aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment. She certainly does not need to identify" by name a "similarly situated" non-protected employee "who managed to avoid termination."  *Kaminski v. Elite Staffing, Inc*., 23 F.4th 774, 777 (7th Cir. 2022); *see also Carlson v. CSX Transp., Inc*., 758 F.3d 819, 830 (7th Cir. 2014) (Explaining that a "plaintiff is not required to identify similarly situated comparators at the pleading stage" and noting that a plaintiff "employee will often not be able to answer those questions without discovery.").

Indeed, even Defendant acknowledges that Plaintiff is not required to identify a comparator by name at this pleadings stage of the case.  (Def.'s Reply Br. at 4).   Yet Defendant argues that Plaintiff has not alleged enough factual allegations as to this element.  (*See* Def.'s Br. at 17).

Plaintiff alleges that "Defendant discriminated against Plaintiff because of her religious beliefs."  (Am. Compl. at ¶ 145).  Plaintiff alleges that "Defendant treated other similarly situated employees with different religious beliefs" than Plaintiff "more favorably than Plaintiff" in that "Defendant treated employees not in a protected class more favorably than Plaintiff by allowing them to work without a COVID-19 vaccination."  (Am. Compl. at ¶¶ 58-60).

Defendant suggests that Plaintiff should be required to include factual allegations

17

pertaining to the specific positions held by those individuals, what services they provided to GM, details as to their "vaccination status,"[3] etc.  (Def.'s Br. at 17).

In support of its position, Defendant directs the Court to *Mitchell*, a district court opinion stating that cases like *Turner,* have concluded that a Title VII claim "will typically require at least some degree of detail regarding" comparator employees.  *Mitchell v. Fujitech Am., Inc*., 518 F.Supp.3d 1073, 1102 (S.D. Ohio 2021).

In *Turner*, however, the district court explained that the rather sparse allegations regarding the similarly situated element were sufficient in that case, although just barely.  *Turner v. United Parcel Svs., Inc*., 2019 WL 5190992 (M.D. Tenn. 2019).   The district court compared the plausibility of allegations in a discrimination case filed by a bank's customer with a complaint filed by a company's own employee.  It found that, "as an employee discussing treatment of other employees, [the plaintiff's] claim to knowledge of differential treatment is inherently more plausible than a debtor's mere belief that certain other debtors were treated more favorably."  *Id*. at *3.

Like the situation presented in *Turner*, the Court concludes that the disparate treatment claims should not be dismissed at this pleadings stage.  The Sixth Circuit's recent ruling in *Savel* also confirms that this issue should not be addressed at this pleadings stage:

> As with the failure-to-accommodate claim, the district court prematurely applied the prima facie case requirements to the disparate treatment claim and found it lacking. The district court expected too much of Plaintiffs 1 and 2 at this early stage. Time—and, crucially, discovery—will tell whether Plaintiffs 1 and 2 satisfy the prima facie case requirements. The district court may ultimately be

---

[3]It is unclear what further allegations as to vaccination status Defendant believes should have been included, as Plaintiff alleged that the comparator employees were allowed to work "without a COVID-19 vaccination."

right that they cannot make that showing. But at the pleading stage, it is too soon
to consider that question.

*Savel, supra*, at *8.

The Court denies this challenge to Plaintiff's disparate treatment claims under Title VII

and the ELCRA.

## II.     Challenges To Plaintiff's Fair Labor Standards Act Claims

In Count III of her Amended Complaint, Plaintiff asserts a claim under the federal FLSA.

Plaintiff alleges that Defendant violated the FLSA when it failed to pay Plaintiff overtime for

hours worked in excess of forty hours per week when she was working for Defendant as a flight

attendant.  She asserts that this was a willful violation and seeks to assert this claim on a

collective basis.

Defendant's motion asserts that Plaintiff fails to state a claim under the FLSA.  It makes

two arguments relating to Plaintiff's FLSA count.

### A.     Should Count III Be Dismissed Because Defendant Is Exempt From FLSA Overtime Requirements Under The Common Carrier Exemption?

First, Defendant asserts that Count III should be dismissed because Defendant is exempt

from the FLSA overtime requirements under the common carrier exemption, and therefore,

Plaintiff's FLSA claims must be dismissed as a matter of law.

The federal FLSA "generally requires employers to pay premium overtime provisions to

employees who work in excess of forty hours per week."  *Thibodeaux v. Executive Jet Int'l, Inc*.,

328 F.3d 742, 749 (5th Cir. 2003) (citing 29 U.S.C. § 207). "There are specific exemptions,

however, to the overtime requirements, including the exemption for 'any employee of a carrier

by air subject to the provisions of title II of the Railway Labor Act.'" *Thibodeaux, supra* (citing

19

29 U.S.C. § 213(b)(3)).  "Those subject to Title II of the RLA include 'every common carrier by air engaged in interstate or foreign commerce . . . " *Thibodeaux, supra* (citing 45 U.S.C. § 181). This exemption is sometimes referred to as "common carrier by air" exemption to the FLSA. *See* 22A Fed. Proc. L. Ed. § 52:1370, *Air carrier employees as exempt from coverage under Fair Labor Standards Act.*

In *Thibodeaux,* a flight attendant filed suit under the FLSA asserting that he was wrongfully denied overtime compensation by his employer.  At the summary judgment phase of the case, the district court granted summary judgment in favor of the plaintiff flight attendant. On direct appeal, the Eighth Circuit reversed, concluding that the defendant was exempt from having to pay overtime under the common carrier by air exemption to the FLSA.  The Eighth Circuit noted that "[n]either the RLA nor the FLSA defines the term 'common carrier by air" but noted that it had considered the issue in *Woolsey*[4]:

> We found that "the crucial determination in assessing the status of a carrier is whether the carrier had held itself out to the public or to a definable *segment* of the public as being willing to transport for hire, indiscriminately.  **And we emphasized that our test "is an objective one, relying upon what the carrier actually does** rather than upon the label which the carrier attaches to its activity or the purpose which motivates it."

*Thibodeaux, supra*, at 750 (italics in original, bolding added for emphasis).  The Eighth Circuit found that, under that test, the evidence in the record established that the defendant was a common carrier by air that was exempt from paying overtime to its flight attendants.

Defendant's motion to dismiss asserts that, "[l]ike the common carrier in *Thibodeaux,* Pentastar and its affiliate similarly hold themselves out to the public as being will to,

---

[4]*Woolsey v. National Transp. Safety Bd*., 993 F.2d 516 (5th Cir. 1993).

indiscriminately, transport for hire, as evidence by their website." (Def.'s Br. at 23). Defendant

then drops a footnote with a reference to its website. (*Id*. at n.6). In support of its position,

Defendant asserts that Plaintiff's Amended Complaint "does not allege" that Defendant has

failed to hold itself out to the public, or a definable segment of it, as willing to transport for hire.

(Def.'s Br. at 24).

The Court rejects this argument – raised in the context of a motion to dismiss (not

summary judgment) – for several reasons.

"Ordinarily a motion to dismiss cannot be granted based on an affirmative defense (such

as the applicability of the RLA exemption) because a plaintiff need not anticipate and negate

potential affirmative defenses." *Dawson v. Air Trans. Int'l, Inc.*, 2021 WL 2425998 at *3 (W.D.

Tex. 2021) (citations omitted). Thus, the Court rejects Defendant's position that its motion

should be granted because Plaintiff failed to include sufficient facts to negate Defendant's

affirmative defense.

Moreover, Defendant's argument focuses solely on the part of the *Thibodeaux* test about

the defendant holding itself out as being willing to transport for hire. Defendant notably ignores

the court's instruction that the test "is an objective one, relying upon what the carrier actually

does" rather than what it says its does. As Plaintiff stresses in her brief, "this is not about what

Defendant says, but rather, 'what the carrier ***actually does***.'" (Pl.'s Br. at 23) (emphasis in

original).

The Court agrees with Plaintiff that this is not an issue that can be decided at the

pleadings stage of this case. That is because determining if the test is met by Defendant, would

require the Court to consider evidence as to both: 1) whether Defendant has held itself out to the

public or a definable segment of it, as being willing to transport for hire, indiscriminately; and 2) what Defendant actually does in practice.  The Court rejects this challenge at this pleadings stage of the case.

### B.    Statute-Of-Limitations Challenges

Defendant notes that the FLSA has a two-year statute of limitations, subject to extension to three years for a willful violation.  (Def.'s Br. at 24) (citing 29 U.S.C. § 255).  Defendant's motion to dismiss includes two statute-of-limitations challenges to Plaintiff's FLSA claims. The Court rejects them both.

Again, a 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations.  *Snyder-Hill v. Ohio State Univ.,* 48 F.4th 686, 698 (6th Cir. 2022).

Defendant firsts asserts that Plaintiff's Amended Complaint lacks sufficient allegations of a willful FLSA violation and, as a result, the Court should rule that a three-year period of limitation does not apply to Plaintiff's claims.  (Def.'s Br. at 24-25)  In support of this argument, Defendant directs this Court to two Sixth Circuit *summary judgment* decisions wherein the court considered if there was sufficient evidence to show a willful violation.  Defendant has not directed this Court to any relevant decisions wherein a district court has held, at the motion-to-dismiss phase, that the plaintiff had failed to sufficiently plead a willful violation of the FLSA.

This Court concludes that Plaintiff's Amended Complaint includes sufficient allegations to state a plausible claim of a willful FLSA violation.

For the extended three-year statute of limitation to apply, the plaintiff must allege, at the pleading stage, that "employer either knew or showed reckless disregard for the matter of

whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Here, Plaintiff's Amended Complaint alleges that Defendant's conduct "constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 2559(a)" (Am. Compl. at ¶ 105) and alleges that Defendant knew, or showed reckless disregard for the fact that it failed to pay Plaintiff overtime compensation in violation of the FLSA." (Am. Compl. at ¶ 101).

Her Amended Complaint includes factual allegations that could be construed as supporting those assertions. As Plaintiff notes in her response, up until May 5, 2023, Plaintiff was classified by Defendant as eligible for overtime. (Am. Compl. at ¶ 96). On May 12, 2003, however, and allegedly "without justification," Plaintiff reclassified Plaintiff as exempt from overtime. (Am. Compl. at ¶ 97). Plaintiff stressed that Defendant took that action within a month of the *Thibodeaux* decision having been issued, despite that Defendant is "a private non-commercial airline" that "exclusively services General Motors and does not offer commercial airline services to the general public." (Am. Compl. at ¶ 15 & 91). Plaintiff also alleges that action was taken by Defendant despite the U.S. Department of Labor having issued, on August 17, 2004, "a response 'to [a] request for an opinion on the application of the overtime provisions of the" FLSA (Am. Compl. at ¶ 106) that concludes that common carrier exemption would not apply to an unidentified entity. (Am. Compl. at ¶ 107). Thus, this Court finds that Plaintiff has alleged a plausible claim that Defendant wilfully violated the FLSA.[5]

---

[5]As other district court's have observed, whether Defendant "acted wilfully is a question of fact that is typically inappropriate for summary judgment, much less at the motion to dismiss stage" of a FLSA case. *Reed v. Friendly's Ice Cream*, LLC, 2016 WL 2736049 at *6 (M.D. Penn. 2016).

Second, Defendant notes that if the alleged violation was not willful, a two-year period of limitation will apply.  Defendant's motion to dismiss contends that if the regular two-year statute of limitation applies, then this Court should rule that Plaintiff's "claims based in actions prior to June 19, 2021" are barred based on the statute of limitations.  (Def.'s Br. at 25).  Thus, this challenge (like the willful one above) does not seek dismissal of Count III of Plaintiff's Amended Complaint.  Rather, Defendant contends that "Plaintiff's claims based in actions prior to June 19, 2021 are barred by the two-year statute of limitations."  (Def.'s Br. at 24).  Given that Plaintiff has plausibly alleged a willful violation, such a ruling would be unwarranted.

## CONCLUSION & ORDER

For the reasons set forth above, the Court ORDERS that Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 12, 2024